UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**CHRISTOPHER COLVIN**           CASE NO. 2:17-CV-00692

**VERSUS**           JUDGE ROBERT R. SUMMERHAYS

**PERFORMANCE CONTRACTORS INC**     MAGISTRATE JUDGE KATHLEEN KAY

## MEMORANDUM RULING

Before the Court in this suit alleging unlawful retaliation in violation of the Family and Medical Leave Act ("FMLA") is a motion for summary judgment filed by Defendant Performance Contractors, Inc. ("Performance"). [Doc. No. 17]. Pursuant to its motion, Performance seeks dismissal of this suit with prejudice. Plaintiff Christopher Colvin ("Colvin") opposes the motion, and Performance has filed a reply thereto. [Doc. Nos. 29, 36]. For the reasons that follow, the motion is GRANTED, and Plaintiff's suit is DISMISSED WITH PREJUDICE.

### I.
### BACKGROUND

Christopher Colvin was employed by Performance as a crane operator at its Sasol facility in Lake Charles, Louisiana. At 5:23 a.m., on January 23, 2017, Colvin called into work and left a voicemail stating he "was not going to be able to make it into work that day." [Doc. No. 17-1 at ¶ 2; Doc. No. 29-3 at ¶ 2]. Colvin gave no reason for his absence.[1] [Doc. No. 17-3 at 25]. Colvin and his wife then took Colvin's step-daughter to South Arkansas Regional Health Center ("SARHC") in El Dorado, Arkansas (a facility where his step-daughter had previously been treated for

---

[1] At his deposition, Colvin testified he did not provide a reason for his absence on the voicemail, because "it was personal" and something Performance was not entitled to know. [Doc. No. 17-3 at 25].

psychiatric issues) so that his step-daughter could speak to her counselor.[2] [Doc. 29-3 at ¶ 3]. According to Colvin, he and his family were initially told the counselor would be in the office shortly. [Doc. No. 29-6 at ¶ 28]. After several hours of waiting, they were advised the counselor would not make it into the facility that day. *Id.* at ¶ 29. After scheduling an appointment for Colvin's stepdaughter on January 27, Colvin, his wife and stepdaughter returned home.[3] [Doc. No. 17-3 at 49-50; Doc. No. 17-18]. That same day, Colvin's supervisors, Scott Fairchild and Carl Marino, made the decision to terminate Colvin's employment due to Colvin's absenteeism.[4] [Doc. Nos. 17-4, 17-5].

The following day Colvin reported to work, arrived at a weekly safety meeting, and handed his supervisor, Carl Marino, a document on SARHC letterhead, which was signed by a person identified as the SARHC receptionist. [Doc. Nos. 17-3 at 28, 17-8]. The substance of the note stated, "Christopher Colvin was seen on 1/23/17 date and left our office at 10:45 time. If you have any question please feel free to contact us at . . . ." [Doc. No. 17-8]. After the meeting, Marino asked Colvin to go with him to the office. Marino then advised Colvin he was firing Colvin and handed Colvin his termination papers. [Doc. No. 17-3 at 28-29]. The termination papers identify Colvin as being fired for "Excessive Absences." [Doc. No. 17-6]. On May 25, 2017, Colvin filed

---

[2] Colvin testified on the evening of January 22, his wife discovered text messages on her daughter's cellular phone indicating her daughter was experiencing suicidal thoughts. [Doc. No. 7-3 at 26].

[3] Colvin's step-daughter later cancelled the January 27 appointment, and rescheduled it for January 31. The facility's records reflect the appointment was "cancelled due to mom getting sick." [Doc. No. 17-18 (emphasis omitted)].

[4] Less than two months prior, on December 7, 2016, Colvin failed to report to work without prior approval. [Doc. No. 17-3 at 19-22]. According to Colvin's supervisors, "When a crane operator, such as Colvin, fails to come to work, it substantially hinders Performance's on-site productivity. It is very important that we have crane operators upon whom we can depend." [Doc. Nos. 17-4 at ¶ 8, 17-5 at ¶ 9].

this suit against Performance, alleging unlawful retaliation in violation of the FMLA. [Doc. No. 1].

## II.
### APPLICABLE LAW

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary

judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

### B. The Family and Medical Leave Act

The Family and Medical Leave Act of 1993 assures unpaid leave for family members who must care for relatives with a "serious health condition." 29 U.S.C. § 2612(a)(1)(C); *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006). Specifically, the Act requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."[5] 29 U.S.C. § 2612(a)(1)(C); *see also* 29 U.S.C. § 2601(b)(2); *Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). The Act makes it unlawful for an employer to discharge or retaliate against an employee for opposing the employer's unlawful FMLA practices. 29 U.S.C. at 2615(a)(2); *see also Lanier v. University of Texas Southwestern Medical Center*, 527 Fed.Appx. 312, 316 (5th Cir. 2013).

As a general rule, in cases involving foreseeable absences the FMLA requires an employee to provide the employer with at least thirty days of advance notice. 29 C.F.R. § 825.302(a); *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842 (5th Cir. 2007). For unforeseeable absences, "an employee must provide notice to the employer as soon as practicable under the facts

---

[5] The FMLA defines the term "son or daughter" to include a stepchild. 29 U.S.C. § 2611(12).

and circumstances of the particular case." 29 C.F.R. 825.303(a); *see also Greenwell* at 842. The parties agree the leave at issue in this matter was "unforeseeable." [Doc. No. 29 at 20, Doc. No. 36 at 13]. As to the required content of the notice when the need for leave is unforeseeable, the regulations provide:

> An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include . . . whether the employee or the employee's family member is under the continuing care of a health care provider; . . . or if the leave is for a family member that the condition renders the family member unable to perform daily activities . . .; and the anticipated duration of the absence, if known. When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA . . . . *Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act* . . . .

*Id.* at § 825.303(b) (emphasis added). In determining whether an employee provided adequate notice to his employer of the need for FMLA leave, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842 (5th Cir. 2007) (quoting *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998)). "The employee must provide such information about [his] condition as will make it evident that the FMLA is implicated." *Towns v. Northeast Mississippi Elec. Power Ass'n*, 478 Fed.Appx. 244, *2 (5th Cir. 2012) (citing *Satterfield* at 981).

Performance contends summary judgment in its favor is warranted, because: (1) Colvin failed to provide adequate notice of his need for leave on January 23, 2017; (2) Colvin's leave was not for a "serious health condition," as defined under the Act; and (3) Colvin cannot show he was retaliated against for participating in an FMLA-protected activity. Because the Court concludes Colvin's notice of the need for FMLA leave was inadequate as a matter of law to reasonably

and circumstances of the particular case." 29 C.F.R. 825.303(a); *see also Greenwell* at 842. The parties agree the leave at issue in this matter was "unforeseeable." [Doc. No. 29 at 20, Doc. No. 36 at 13]. As to the required content of the notice when the need for leave is unforeseeable, the regulations provide:

> An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include . . . whether the employee or the employee's family member is under the continuing care of a health care provider; . . . or if the leave is for a family member that the condition renders the family member unable to perform daily activities . . .; and the anticipated duration of the absence, if known. When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA . . . . *Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act* . . . .

*Id.* at § 825.303(b) (emphasis added). In determining whether an employee provided adequate notice to his employer of the need for FMLA leave, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842 (5th Cir. 2007) (quoting *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998)). "The employee must provide such information about [his] condition as will make it evident that the FMLA is implicated." *Towns v. Northeast Mississippi Elec. Power Ass'n*, 478 Fed.Appx. 244, *2 (5th Cir. 2012) (citing *Satterfield* at 981).

Performance contends summary judgment in its favor is warranted, because: (1) Colvin failed to provide adequate notice of his need for leave on January 23, 2017; (2) Colvin's leave was not for a "serious health condition," as defined under the Act; and (3) Colvin cannot show he was retaliated against for participating in an FMLA-protected activity. Because the Court concludes Colvin's notice of the need for FMLA leave was inadequate as a matter of law to reasonably

apprise Performance of his need to take time off for a serious health condition, the Court need not address Performance's second and third arguments.

## III.
### ANALYSIS

Performance argues Colvin cannot establish a prima facie case of retaliation under the FMLA because, *inter alia*, Colvin failed to provide adequate and sufficient notice of his need for leave on January 23, 2017. [Doc. 17-2 at 10]. It is undisputed that the only notice Colvin provided was the voicemail placed on the day he was to report to work, and the only information he conveyed was that he "was not going to be able to make it into work that day." [Doc. No. 17-3 at 24-25]. According to Performance, this notice was "woefully short" of that required under the FMLA, as "[t]here was no way Performance could ascertain from Colvin's voicemail that FMLA coverage might be an issue." [Doc. No. 17-2 at 14].

Colvin responds that he has demonstrated the existence of a genuine issue of material fact with regard to whether he provided adequate and sufficient notice of the need for FMLA leave. In support of his position, Colvin argues: (1) he complied with Performance's internal leave policy; and (2) at a minimum, the notice provided by Colvin gave rise to an affirmative duty on the part of Performance to inquire as to whether Colvin's absence was due to an FMLA-qualifying reason. With regard to Colvin's first argument, Colvin contends his understanding of Performance's leave policy was that if an employee "was going to be out of work, he was directed to 'call in' to the number provided on the Performance-issued call-out card and speak to Ms. Judy and/or leave a message." [Doc. No. 29 at 25]. Because Colvin complied with the foregoing policy by leaving a

message with Ms. Judy that he would "not be able to make it into work that day," he argues he was in compliance with Performance's leave policy.[6]

Colvin frames the issue incorrectly. The issue before the Court is not whether Colvin improperly delivered his request for leave; rather, the issue to be decided is whether the information imparted to Performance was "sufficient to reasonably apprise it of [Colvin's] request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 761 (5th Cir. 1995). The Court finds it was not sufficient as a matter of law. Neither Colvin's voicemail, nor the note from the SARHC receptionist, sufficiently connected Colvin's absence on January 23 to a medical condition rising to the level of seriousness protected under the FMLA. Although an employee need not expressly invoke his rights under the FMLA, he still must provide sufficient information to reasonably apprise the employer that the request for time off is due to a serious health condition. *Greenwell* at 842; *Manuel*, 66 F.3d at 764; 29 C.F.R. § 825.301(b). Here, there was *no* reference to *any* medical condition in Colvin's message on January 23rd. While it is the employer who "designate[s] leave as FMLA-qualifying," 29 C.F.R. § 825.301(a), the employee nevertheless "*must* explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act." *Id.* at § 825.301(b) (emphasis added); *see also Willis* at 419. "This sharing of the informational burden will not work if employees, for the purposes of litigation, can later designate leave as FMLA-qualifying without making a proper showing that, at the time they requested leave, they put their employer on notice that FMLA leave was necessary due to a serious medical condition." *Willis*, 445 F.3d at 419.

---

[6] Colvin further asserts this was the same procedure he had previously followed for two of his own prior health issues, and he was never notified that he was not following proper procedure. [Doc. No. 29 at 25]. However, Colvin testified at his deposition that for his prior health issues, he communicated his specific reason for leave to his supervisor, kept his supervisor informed of his medical status, and presented doctor's notes upon his return to work. [*See e.g.* Doc. No. 17-3 at 11-19; Doc. No. 17-11].

The only advance notice Colvin provided to Performance was that he would not make his shift at work.[7] He thereafter tendered a note from a receptionist stating "Christopher Colvin was seen on 1/23/17 date and left our office at 10:45 time." [Doc. No. 17-8]. No rational trier of fact could conclude that this was "sufficient to reasonably apprise [Performance] of [Colvin's] request to take time off for a [family member's] serious health condition within the meaning of the FMLA." *Satterfield* at 980 (where the only information imparted to the employer prior to its discharge decision was a note delivered by the employee's mother stating the employee "was having a lot of pain in her side" and would not be able to work that day but would like to make it up on one of her days off, employee's notice was insufficient to reasonably apprise employer of employee's request to take time off for a serious health condition within the meaning of the FMLA); *Greenwell* at 842, 844 (even assuming plaintiff's son suffered from a serious medical condition under the FMLA, employee's notice of unforeseeable leave was insufficient to survive summary judgment regarding her retaliation claim, where only information imparted to employer was that her son had been injured playing, the notice provided no indication of employee's intention to seek FMLA protected-leave and did not sufficiently connect employee's absence to a medical condition rising to the level of seriousness protected under the FMLA); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999) (employee's reference to his mental condition did not constitute the requisite notice of an intent to invoke FMLA leave); *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997) (employee did not provide adequate notice of need to take FMLA leave, where his wife, who was also an employee, told employer she was sick and she and her

---

[7] Colvin argues that had someone from Performance called him after receiving his voicemail on January 23, he would have provided more information regarding why he was taking leave. [Doc. No. 29 at 40]. The Court notes, however, Colvin was able to call and speak with two of his co-workers on January 23. [Doc. No. 17-3 at 38-41] It thus appears he could have made a second attempt to contact a supervisor at Performance to explain the reasons for his absence.

spouse would be out for a while, and employee later informed employer he would be out but offered no further information).

"While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant." *Satterfield* at 980 (quoting *Johnson v. Primerica*, 1999 WL 34148, at *5 (S.D.N.Y. 1996)). "An employee merely alleging sickness as the reason for [his] absence does not automatically provide sufficient FMLA-notice." *Greenwell* at 843; *see also* 29 C.F.R. 825.303(b) ("Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.") *A fortiari*, an employee who provides no reason at all for his absence certainly does not provide sufficient notice to his employer that his leave is due to a serious health condition. In this case, even assuming Colvin's step-daughter suffered from a "serious health condition" on January 23rd and required FMLA-qualifying medical attention that day, Colvin failed to provide Performance with any notice specific to his step-daughter's condition such that Performance could determine whether Colvin's absence qualified for FMLA protection. *Greenwell* at 843; *Satterfield* at 980.

The Court likewise finds Colvin's second argument - that at a minimum, the notice and receptionist's note he provided gave rise to an affirmative duty on the part of Performance to inquire as to whether Colvin's absence was due to an FMLA-qualifying reason – is insufficient to create a factual issue for trial. As Colvin correctly states in his brief:

> Although an employee need not use the phrase "Family Medical Leave Act (FMLA) leave," *he must give notice that is sufficient to reasonably apprise his employer that his request to take time off could fall under the FMLA. Lanier v. Univ. of Tex. Southwestern Medical Center*, 527 Fed.Appx. 312, 316 (5th Cir. 2013) (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762-64 (5th Cir. 1995)). . . . While an employer is not required to be clairvoyant, an employer may have a duty to inquire further *if statements made by the employee warrant it. Id.* (citing *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998)).

[Doc. No. 29 at 38 (emphasis added)]. In this matter, Colvin provided no information to his employer indicating that he required leave due to a serious medical condition. Nothing in the information conveyed by Colvin indicated his leave might be protected under the FMLA. As discussed in *Lanier*:

> Here, Lanier's statements were insufficient to invoke the FMLA. The record establishes that the only request for leave Lanier made was a text message requesting to be taken off call the evening of September 2, which she sent after learning her father was in the emergency room. Lanier argues that Leary should have inquired further since he knew that Lanier's father was over 90 years of age and in poor health and because she had told Leary that morning that her father was having breathing problems. It would be unreasonable to expect Leary to know that Lanier meant to request FMLA leave based on these facts. Lanier's only request was to be relieved of on-call duty that night. Lanier had taken FMLA leave in the past and was familiar with the proper way to request it, yet she did not do so here. No reasonable jury could conclude that the text message Lanier sent was sufficient to apprise Leary of her intent to request FMLA leave to care for her father. Accordingly, we affirm the grant of summary judgment to UTSW on this claim.

*Lanier* at 316-17. Here, Colvin's statements to Performance, like those in *Lanier*, were insufficient to invoke the FMLA. Because Colvin did not make a proper request for FMLA leave on January 23rd, he has failed to carry his prima facie burden regarding his claim for unlawful retaliation in violation of the FMLA. *Lanier* at 317; *Satterfield* at 981 (requiring employers to determine whether leave is covered by the FMLA every time an employee is absent due to sickness "is quite inconsistent with the purposes of the FMLA, because it is not necessary for the protection of employees who suffer from 'serious health conditions,' and would be unduly burdensome for employers . . . ."); *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997) (insufficient notice provided to make employer aware that employee's absence was due to potentially FMLA-qualifying reason, as required to trigger employer's burden to request further information, where employee's husband merely informed supervisor that employee was having some tests run).

## IV.
### CONCLUSION

For the reasons set forth herein, the Court finds Colvin has failed to show a genuine issue of material fact exists for trial on his claim of unlawful retaliation in violation of the FMLA, because he has failed to show he provided notice to Performance that sufficiently apprised Performance that his leave was due to a potentially FMLA-qualifying reason. Accordingly, the motion for summary judgment is GRANTED, and Colvin's claims are DISMISSED WITH PREJUDICE.

THUS DONE in Chambers on this 25th day of January, 2019.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE